Adam clerk, if you could please call the case 324-0289. The people of the state of Illinois, Appalachia versus Ignacio C. Jacobo appellant. Ms. Brenner, you may proceed. Thank you, Justice. Good afternoon, your honors. May it please the court. My name is Anne Brenner with the Office of the State Appellate Defender here representing Petitioner Appellate Ignacio Jacobo in this matter. Ignacio respectfully asked this court to find that the circuit court erred in denying his third stage post-conviction petition claim that his counsel was ineffective for failing to include trickery and deceit in his pretrial motion to suppress Ignacio's self-incriminating statements to law enforcement. Additionally, Ignacio asks this court to remand for a new trial. This is an ineffective assistance of counsel claim that ultimately turns on the voluntariness of Ignacio's statements to law enforcement. What happened here, Justices, is counsel filed a motion to suppress based on Miranda, a Miranda violation. The state argues in part that this issue was already litigated, but this is not a Miranda issue. Miranda, of course, is a prophylactic measure rule designed to protect. Ignacio is arguing here that his self-incriminating statements to law enforcement were involuntary based on detectives' deployment of trickery and deceit to such a shocking degree that detectives fraudulently extended an implicit offer of leniency to Ignacio. Over the eight and a half hour interrogation, detectives presented Ignacio with a decision between A, reciting for detectives exactly what they asked him to say on the one hand, and B, spending his life in prison. That is, detectives fraudulently offered an implicit benefit to avoid culpability in prison if Ignacio simply repeated for detectives everything they wanted to hear. Thus, as in Spano v. New York, detectives here were not merely trying to solve a crime or even to absolve a suspect, but were rather concerned primarily with securing a statement from the defendant on which they could convict. Detectives' false promise of leniency was supported by trickery and deceit over the eight and a half hour interrogation, during which detectives repeatedly reiterated they only wanted Ignacio as a witness. Two other individuals were responsible. Ignacio was not guilty. Ignacio had done nothing wrong. Ignacio was one of the good guys. Detectives wanted to help Ignacio. Ignacio was a victim of the two older culprits in this case, Sergio and Santana. Detectives had evidence that Ignacio tried to stop the guilty parties from committing arson. The victim's families would thank Ignacio for his help solving the crime, all of which pointed to Ignacio avoiding jail by helping detectives and avoiding prison by repeating what detectives said was true so that they could tell their boss and the people of Illinois that Ignacio was on the side of the good guys and not one of the culprits in this crime. The repetitive nature of detectives' trickery and deceit is evident in just a few brief examples from the record. At Supplemental Exhibits 81 to 82, Ignacio recited that Santana carried a coke bottle based directly on detectives' explicit insistence. Question, what did Santana have? Santana, what do you have in his hand? Answer, I never see nothing. I saw something in his hand, but I don't know what. Question, was it a beer bottle? A tequila bottle? What kind of bottle? What did he have in his hand? Answer, I never see nothing. I see something in his hand, but I don't know. Question, what did it look like? What kind of bottle? Answer, I don't remember a bottle, maybe like one coke bottle. Question, think, what kind of bottle? Was it plastic or glass? Answer, glass. To be clear, state's evidence did not include a bottle. It was a cooler full of gasoline that Santana used to ignite this fire. A second example of the repetitive nature of detectives' trickery and deceit is that Ignacio only was able to affirm that he walked with Santana from the Jeep to the scene of the house fire and ran back from the house fire to the Jeep after detectives relayed that fact to him on 11 different occasions. Only after that 11th occasion was Ignacio able to affirm that that did happen that way. Another example is that Ignacio identified the parking spot of the Jeep during the arson only after officers drew him a map and placed an X on the parking spot for him. And then a final example, there were 17 different times that detectives falsely recited quotes attributable to Ignacio, which he never said, and then asked him to confirm that he actually did say that. And here's an example, again using that coke bottle at Santana that detectives believe Santana had, though they never found a coke bottle anywhere on the scene. Question, what you said before, did you see Santana put the bottle down like this? Demonstrating. Answer, I don't know. Question, I thought you said he did, now you don't know? Answer, no. That's from Supplemental Exhibits 95 to 96, and to be clear, Ignacio had never demonstrated setting down a bottle for detectives at this point in the interrogation. Now whether a statement is voluntary turns on the totality of the circumstances and no single factor is dispositive. That's People v. Richardson, Illinois Supreme Court case. At the time of the interrogation, Ignacio was an 18-year-old with no history in the criminal justice system. He was a Spanish speaker with extremely limited English skills. He had entered the U.S. at 15 and begun working immediately. He fraternized, lived, worked almost exclusively with Spanish speakers. He had a third grade education. He was illiterate. The interrogation lasted eight and a half hours. He was left alone for about two hours before they actually began the questioning, but he was in that room for eight and a half hours. He was questioned by two detectives at the same time. He had an interpreter, but that interpreter was pulled after two hours and 53 minutes, and detectives testified that they pulled the interpreter specifically to gain a strategic advantage over Ignacio because they thought he was using that extra time during the interpretation to come up with answers that he otherwise wouldn't have been able to come up with so quickly. And again, the translation, as was litigated in the original motion to suppress hearing, the translation was quite limited that was provided. Now, upon a defendant's challenge, it is the state's burden to prove voluntariness, and it is our position that the state did not prove voluntariness in this matter. And there can be no doubt that prejudice resulted in this case as a result of counsel's deficiencies. How does the burden change, if at all, when it's not raised until appeal in the context of ineffective assistance? Certainly. And as I alluded to at the outset, Justice, this is an ineffective assistance of counsel claim that relies upon us proving the voluntariness. So certainly it's our burden at this stage to prove the two-pronged test in Strickland of ineffective assistance. But we are laying out the voluntariness aspect because we understand that our ineffectiveness claim relies heavily on that. If this court finds that his statements to law enforcement were not voluntary, then we think, we believe this court must find that the outcome of the proceedings would have been different had that interrogation been thrown out. So in your brief on the prejudice issue, you seem to suggest that, you know, but for these statements, there basically isn't any likelihood that the defendant would be found in the car before the fire. And there are these pretty damning statements to Rodriguez immediately after the fire when the car returns to his house saying, I don't have it in front of me, but where's the effect of the house was lit or very lit. And then there's the phone call the next day saying to Rodriguez, you know, you guys better not talk to the police or I'm paraphrasing, but your family is gonna, you know, be in trouble or pay the price or whatever it was. Pretty damning stuff from a, I mean, it's circumstantial, I suppose, but it isn't just his statement that I threw a rock or that I was there. There's a little more to it, isn't there? Yes, Your Honor. There is a bit more to it. However, both of the witnesses, the independent witnesses or not so independent witnesses that you're referencing, Rodriguez who owned the Jeep, that's the individual from whom the three, Santana, Sergio and Ignacio borrowed the Jeep. So we have Rodriguez placing Santana in the, or excuse me, Ignacio in the Jeep with Santana and Sergio. We know that he left that house party in that Jeep and he came back from Rodriguez. And then yes, Rodriguez quotes Ignacio both as threatening him and threatening his family if he's to talk to police and also saying upon returning to the house party that the house was lit up as you suggested, Justice. Our position is that circumstantial evidence would not have been enough to convict absent the self-incriminating statements in the interrogation. And an argument could be made at trial that both Rodriguez and Sergio had motives to lie. Certainly Sergio did. Rodriguez, his car had been seized and that was his livelihood. He was a painter and he worked construction and he needed that car and it was a brand new car to him and he was making payments on it. So that was something that law as they were questioning him and eliciting these statements from him. They also had gone to Rodriguez and said, your car was involved in an arson that killed two people. What do you know? And he denied knowing anything. So it was after that initial denial to police that he then came back to police and said, well, actually I didn't want to say anything because Ignacio had called me. So there are ways to call into doubt both Rodriguez's testimony, damning testimony, we would agree it's damning, but I think there are ways to call it into doubt as with Sergio. And Sergio even admitted at trial that he originally had four counts of first-degree murder hanging over his head and he was, those were dismissed in exchange for his testimony against Ignacio. And his testimony is far more damaging than Rodriguez's. Certainly Rodriguez has that quote from Ignacio that it was lit up, that the house was lit up and he smiled according to Rodriguez, but it's Sergio that places Ignacio on the porch at the time, or at least on the property of the house at the time that the fire started. And Sergio ends up getting 20 years at 85% and not natural life as both Santana and Ignacio did. Sergio also admitted on the stand that Santana's plan all along had been to blame the fire on Ignacio. So that is our position as far as prejudice. And additionally, we would argue that clearly trial counsel's strategy here was to remove the self-incriminating statements from trial. They simply went about it the wrong way by arguing that there was a Miranda issue and not focusing in on the trickery and deceit. So if this court is defying that Ignacio's statements were involuntary, it creates a reasonable probability that but for counsel's failures, the results of the proceedings would have been different. Thank you. Justice Peterson, Justice Hedl, any follow-up questions? I do not. Thank you. Ms. Brenner, you will have an opportunity in rebuttal. Thank you. Ms. Navarro. Thank you. May it please the court, counsel, my name is Corinne Navarro and I represent the state of Illinois. Unappealed defendant raised a single issue that the trial court aired and denied defendants post-conviction petition following third stage review. Now the post-conviction hearing act allows for a challenge to a conviction based on a constitutional violation and it sets forth three stages of review. Here we were at third stage, which occurred after an evidentiary hearing was held before the trial court and where the trial court was able to serve as a fact finder and determine the credibility of the weight of the testimony heard and accord weight to all the evidence that was presented. Excuse me. So therefore on appeal, the trial court's decisions and findings are only reversed where it was manifestly erroneous, which means that it was unreasonable, arbitrary, or not based on the evidence which was presented during the hearing. Now here defendant's claim was an assistance of trial counsel claim, which required that defendant established two prongs. The first, that the attorney's performance fell below an objective standard of reasonableness and the second, that that deficient performance prejudiced the defendant. The state's position is that defendant did not establish either and thus the trial court's dismissal of the petition was improper. As to the first prong that was required, the reasonableness, defendant argues in the petition that trial counsel failed by failing to file a motion to suppress defendant's statements, essentially arguing not necessarily that a motion was not filed but that the strategy that was used in filing that motion was incorrect. Prior to trial, counsel did file a motion to suppress on the basis that defendant did not voluntarily normally waive his Miranda rights. Excuse me. Now defendant argues that the proper basis was supposed to be that it was defendant's statements were elicited based on trickery and deceit. Now an evidentiary hearing was held and trial counsel was called to testify and explained, in this case defendant did have two counsels present, one of them is the one that testified at the evidentiary hearing, but that counsel explained that after reviewing the video, the transcripts, and all the evidence, it determined that it did not believe that a basis of trickery and deceit would be successful for the motion. Thus it chose to use what it counsel believed at the time to be the best possible argument, which was that Miranda warning. You're saying it was a decision that was made by counsel? Correct. So essentially here we're looking at the theory and the strategy that if it's a decision, it's a trial strategy. What would be the benefit of a strategy when you're having the same, you're still going to run a motion, you probably have the same witnesses, why not just go ahead and do this? And wasn't that the second part of this is, that wasn't the lead counsel that testified, correct? Correct, it was not the lead counsel, there was a different counsel that was the lead counsel and that counsel did not testify. So while it could have been included on there, the state's position is that the fact that it wasn't physically included on there doesn't render it unreasonable because when you look at the existing case law, it's been established that deception on its own is not sufficient. So counsel put forth the best argument that it thought it had as a way to argue in front of the court and make their argument strong and have the best possible outcome. There is a difference between deception, your fingerprints might be on the rock or suggestions like that. That's deception, but just tell us repeatedly telling this suspect that if you tell us X and Y, you're going to be the good guy, you're not going to spend the rest of your life in jail, and not once, not twice, not three times, but I lost count a lot. That's not deception, the question is, is that a promise implicit or direct to essentially coerce him to say something that he clearly wasn't inclined to admit at least at the beginning? That's not deception, I mean that's kind of a promise, right? Arguably. So the state's position would be that it's not a promise and it's also not trickery. And that's where we look at people versus McFadden, where the court there explained that one of the big reasons why I didn't find police officers lying to defendant about the evidence that they had against him and why they determined that that was not trickery was because the defendant continued denying involvement. If we look through the eight hours of video and through the transcript, there and even defendant's own brief argues and states that the police officers consistently gave defendant a version of their events, their story as defense counsel called it in the brief, and defendant actually denied involvement. Defendant didn't agree to their stories of event and even when you look at it, the officers consistently told defendant, you threw this rock, you wanted to save them, you did this because of this. Defendant still maintained throughout the entire interrogation that he did not throw anything. And that's also one of those important things to look at because you look at the totality of it and it's not just was there trickery, was there deceit, like each are not independently, they don't invalidate a confession or any statements. It's looking at the here the defendant maintained that he was not involved. The only thing that came from it was that he placed himself there. But every other story as defense counsel called it or every other theory that police thought that they had, defendant consistently denied involvement. This shows that his statements were involuntary because he was denying involvement and merely telling defendant, tell us the truth, we know you're lying is not sufficient to be considered deceptive or impermissible trickery. Those are, I think, very good arguments to make after a suppression hearing. But I come back to my original. This is an 18 year old, eight and a half hours of interrogation, two languages. You're saying that they're not fall below the objective standard. The state's not including those did not fall below the objective standard because trial counsel sought to suppress the statements you after reviewing all the evidence and making that trial decision of this is the best possible outcome and that this is the best argument that I have based on what everything I've reviewed. And this actually goes even towards that prejudice prong when we look at it, because in order to establish prejudice, defendant needed to establish that there was a reasonable probability that the motion would have been granted and that the outcome would have been different. Now, when we look at the probability that the motion would have been granted, looking at the trial court's explanation and reasoning for denying the original motion, the trial court actually took these very arguments into consideration. Even though counsel did not specifically raise them, the trial court did consider them and its explanation, it specifically stated that. It considered whether there was any coercion that removed volunteering, volunteering this from defining state didn't didn't our court in the direct appeal explicitly indicate that trickery and deceit was not before the trial court and declined to consider that issue on direct appeal. Yes, the appellate court declined to accept that issue, but the trial court. Well, they declined to accept it because they said it wasn't considered by the trial court. Wasn't that the idea for why they refused to accept it? From my understanding, it was that the appellate court stated that it was not brought. It was not officially brought in on appeal, and that's why it wasn't being considered by the appellate court. But it doesn't diminish from the fact that the trial court nevertheless did consider it and used it in its reasoning to. Rule on the original motion to suppress statements because in there, the trial court gave a very thorough explanation of how it considered everything because it's a motion to suppress would not be would not involve in just an individual item, but that it needed to consider everything. And there it also. Looked and considered whether there was compulsion or inducement or anything that could affect the voluntariness of defendant. So if the trial court actually considered that, then there is no reasonable probability that the trial court would have granted that motion. But if I'm the trial court judge and I'm presiding over a motion to suppress statements and the theory that's being advanced by the defense is a Miranda claim, I might. I might go. I might just quote the litany of things I'm to consider, which might include, you know, deceit or compulsion or whatever. But my focus isn't there because that's not what was being argued. I mean, so to for the trial judge simply to say, you know, I hear it. So here's the multiple factor test. I've considered it and I believe that the defendant was properly Miranda is understood as Miranda rights. I don't know that that's necessarily a finding by the court in that context that there was no trickery to see it or promises. I mean, I get the argument. It's not an unfair argument, but I'm not sure that I think that's actually what happened. And just as I would, I would agree because I, and I do agree that there are instances where pre sentencing, the judges will go through a list of this is everything I had to consider. But I think in this case, if you look at the actual reasoning of the trial court, the trial court went above just listing, this is everything I had to consider. The trial court specifically stated, I reviewed the video and in reviewing the video, I did not any threats or promises to defendant. So the state's position is that this wasn't just the trial court listing everything it needed to consider, but actually made that finding because it stated, I reviewed the video and I found no threats and no promises, which is exactly what's being argued now that there was promises made to defendant in exchange for his statements, which is what the trial court already determined. It did not see and did not find. And that's why we argue that that probability that the motion would have been granted is not there. And even if the motion may have been granted, nevertheless, you still have to establish that had that motion been granted, the outcome of the trial itself would have been different. Now here, looking at defendant's brief, defendant themselves argue that defendant consistently denied involvement, consistently stated, I was not there. I do not know. Even though at the end he stated I was present, he still denied throwing the rock. He still denied all of the theories that the police officers gave. So really the only thing defendant in that interrogation alluded to was his presence, which was already established by the other evidence during the trial. During the trial, there was two individuals that placed defendant in the vehicle and at the location. We had Rodriguez who stated it was defendant that asked for the car and he was able to state where everyone in the car was sitting when they left the home, putting defendant in the backseat, Sergio driving, and Santana in the passenger. And he again stated that's exactly how they returned afterwards. And then you had Sergio's testimony who again confirmed that they left Rodriguez's home, went to the property, excuse me, and then you had the testimony of an independent party who saw the two individuals running and get into that truck and stated that she heard glass breaking and then saw a fire. So here you have more than just defendant's statement saying that he was present. You actually have a variety of witnesses who were able to point a picture for the trial court and establish all of the elements that were necessary. So the state would proffer that even if this motion had been granted, the outcome of the trial would not have changed considering that defendant was present at the location and this was all corroborated independently from his own statement. And because the state believes that the prejudice was not established and that unreasonable was also not established, the state believes that the trial court properly denied defendant's post-conviction petition following that evidentiary hearing in the third stage review. That's why we ask that this court affirm the trial court's decision. Thank you. Any additional questions? Just one question as an example on the issue of promises, sir. I'm going to read just one quote as an example. If you don't tell us what happened, you are going to go with Santana, you are going to get a hard time, not this, this. He knows he's been bad, but him forever in jail. You have got to decide if you're going with us or going with him. How would you characterize that? Is that not at least an implicit hint that if you don't tell us what we want to hear, you're going to prison and whatever, hard time. If you don't, you're going with him, which implies hard time. Now that's not a specific length of a sentence, but doesn't it at least hint at some sort of a promise? I see my time is up, so I'll briefly answer. The state would submit that that was not an implicit promise. If anything, as the officers were repeatedly asking, they were asking defendant for the truth. And as defendant, they would posit what they believed was wrong. And if defendant did not agree, they would ask him to tell them what happened. So it was not exactly them saying, you have to say this. It was, we think this is what happened. Tell us what happened. So here they were merely asking defendant to tell the truth as to what happened. So we don't believe that that was a promise. Okay. Thank you. Thank you. All right, Ms. Navarro. Thank you. Ms. Brenner, reply. Thank you, Justices. Just a few brief matters in rebuttal here. With regard to the evidentiary hearing at which trial counsel testified, as was discussed, trial counsel testified that it was a matter of trial strategy to pursue Miranda in the motion to suppress. He also acknowledged in his testimony in cross-examination that he was not familiar with the trickery and deceit and offers of leniency area of the law at the time he testified. And of course, that's, this is at the third stage, the third stage evidentiary hearing. So this is a good, almost 20 years beyond the original motion to suppress. So, but again, he's testifying that this time, he currently, he has not reviewed the area of the law. So he can't really speak concretely to whether a motion to suppress would be successful. Hold on. You're talking about counsel at the post-conviction hearing? Yes. Counsel's testimony at the post-conviction hearing. Didn't he say they considered it and didn't think it was worth pursuing? Yes. Okay. He did. He said that on, on, on direct examination, but on cross-examination, he admitted that he actually was not at the present time, like currently familiar with the area of trickery and deceit. So looking back now through the lens, he can't, he can't apply the current law because he hasn't really looked into it. That's what he was admitting to on the stand. He also said he was not lead counsel in the case. And essentially he was saying there that it was not his decision to make. It at this point, at this, the voluntariness issue, that is the state's burden. So it was the state's burden to call the correct attorney who could tell, tell us the lead counsel on the case to tell us why the motion to suppress was not filed using trickery and deceit. So was there any evidence in the record regarding why lead counsel did not testify? He is currently a judge is I the reason. Judge Egan. With regard to defendant denying his involvement ad nauseum throughout the interrogation and being persistent and persistent with his story, Ignacio did testify at the third stage evidentiary hearing that he felt tricked, that he only fully understood that detectives were going to use his interrogation and statements against him when he was sitting in trial and that he believed he must say what the detectives wanted to hear because they would accept nothing less. But he never did. Did he? He did. He did. And that is another point. And I appreciate that. But he answers the question, right? But beyond that, does he say anything else other than putting himself there? He says, and I'll just quote from the record just briefly, because it's a little bit back and forth. He's answering about, did you see him throw a rock through the window or what? That's the question. Answer. I don't see him hit the window, him being Santana. He took the rock and didn't hit the window, but the side. Question. He didn't hit the window. Sergio saw, but he thinks it hit the window, but no, you hit the house with the rock. How many times? Just once? Answer. It wasn't a big rock, a little one on the side. It was here by the tree. Question. So now we know you're doing good. This is the window and the stairs at this house. Where's the door at? And at that point, they're pointing to a diagram they've drawn with a door and windows on either side. This would be the door. Was it like this? Answer. Yes. Question. Yes. Where is the window? And you did not break it. Let me get this. There was a window, a door, a window. There was a railing. Did you walk up here? Answer. Yeah. And Santana says, break the window, break the window. I see a rock on the street, little rock, and I throw it. Question. So he says, throw the rock. So you pick up a little rock and you throw it. Answer. Yes, I was scared. So he does admit, and as the state pointed out, it's not entirely clear in the briefs, but he does admit explicitly that he picked up the rock and he threw a rock. He does not admit to throwing the rock through the house, but of course the rock is discovered inside the house. And then just one other issue I wanted to touch on quickly with regard in rebuttal. Again, the voluntariness issue was addressed in the court's reasoning during the motion to suppress, but as has been discussed here, that issue was not before the court. The attorneys did not present argument on trickery and deceit. And as this court acknowledged on direct appeal, that while it was briefly mentioned trickery and deceit at oral argument, it was not sufficiently briefed, nor was it argued during the original motion to suppress. So the bottom line here, Justices, is detectives implored Ignacio to admit he threw a rock through the window of the house or lose their implicit offer of leniency. They conditioned staying out of prison upon Ignacio repeating what detectives believed to be true. They explicitly sought specific facts lacking corroborating evidence, which they nonetheless believe to be true, such as this non-existent coke bottle or that Ignacio ever touched the rock. There is no independent corroboration that Ignacio touched the rock absent his self-incriminating statement. Tellingly, detectives requested the translator to explain extradition to Ignacio only after he gave them his part of the deal, which was to acknowledge that he touched or picked up and threw the rock. Quote, we definitely need the interpreter. I'm going to stop you, Ms. Brenner. I think you've done a very good job making your points. Justice Hedl or Justice Peterson, any additional questions? Thank you. No. Well, one question. Is it true in my review that counsel at the post-conviction at the third hearing for your client said, I might not have thought of filing a motion based on trickery or deceit, and then went on to explain why counsel many years ago should have. I believe he did actually say that. I wouldn't have thought of it, or I may not have thought of it. Yes, he did. He did actually say that at the hearing. Thank you. Okay. Don't tell him I brought that up. I don't want to put him on the spot. I just wanted to clarify my memory of exactly what happened. Okay. Thank you. Thank you. All right. Well, we thank both sides for a spirited argument. We are going to take the matter under advisement and render a decision in due course. Court is adjourned for this session. Thank you. Thank you. Thank you.